UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:08-CV-00434-R

DALE E. ZANCHI                                                                                        PLAINTIFF

v.

UNITED DEFENSE, L.P., LIMITED, et al.                                              DEFENDANTS

MEMORANDUM OPINION

This matter comes before the Court upon Defendant Local 830 of the International Association of Machinists and Aerospace Workers, AFL-CIO's ("Union"), Motion for Summary Judgment (DN 22). Plaintiff has responded (DN 23) and the Union has replied (DN 27). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is GRANTED.

Also before the Court is Defendants United Defense L.P., Limited's ("UDLP") and BAE Systems Land and Armaments Holding, Inc.'s ("BAE") Motion for Summary Judgment (DN 21). Plaintiff has responded (DN 29) and UDLP and BAE have replied (DN 33). This matter is now ripe for adjudication. For the reasons that follow, Defendants' Motion is GRANTED.

BACKGROUND

Plaintiff Dale Zanchi brought this action against his former employer ("the Company"), and the Union, his collective bargaining agent. Zanchi alleges that the Company violated the collective bargaining agreement and that the Union breached its duty of fair representation.

Zanchi began working for the United States government in 1975 at the Naval Ordinance Station. The facility was later sold to UDLP, and then acquired by BAE on June 24, 2005. In 1981, Zanchi became a mechanical inspector. He held that position until he was laid off on February 13, 2003. At the time of his layoff, Zanchi's job title was mechanical inspector Grade

7 ("LG7").

The job description for Zanchi's LG7 position included non-destructive test ("NDT") inspection. The Union, however, states that only individuals with the required NDT certification performed NDT work. Zanchi did not receive specific training in NDT inspection or possess formal NDT certification. The process of becoming NDT certified is demanding and time consuming; it requires attending classes, passing a written exam, and extensive on-the-job training. The Company states that it was necessary for it to employ NDT certified individuals because a number of its contracts with the U.S. Navy required that certain inspection functions be performed by NDT certified individuals.

Two individuals at the Company possessed NDT certification: Lewis Furgason and Kenneth W. Higdon. Higdon was hired in 2001. Pursuant to the collective bargaining agreement, Zanchi had considerable seniority over him. In 2002, due to his lack of seniority, Higdon was laid off, leaving Furgason as the Company's only LG7 mechanical inspector with NDT certification.

In March 2005, Furgason took a short-term disability leave, which left the Company without an LG7 mechanical inspector to perform NDT-certified work. Charles Coffey, then Business Unit Manager at BAE, states that after Furgason went on leave he approached the Union about creating a new job classification that would require NDT certification. The Union agreed to the new classification, and subsequently the Company created the new position of NDT Inspector. The Company re-classified Furgason as an NDT Inspector, and opened a second NDT Inspector position, ostensibly so that someone would be able to perform NDT-certified work while Furgason was unavailable.

2

Coffey states that the Company posted the new position internally, but because there were no internal candidates for the position, the Company sought external candidates. Higdon, who possessed the required NDT certification, applied externally and was awarded the position.

Meanwhile, soon after he was laid off in 2003, Zanchi filed a grievance with the Union. The matter was later dropped by the Union and not submitted to arbitration. Zanchi also filed an unfair labor practice charge against the Union with the National Labor Relations Board ("NLRB"), which was found to be without merit. His appeal of the dismissal was also found to be without merit. Additionally, Zanchi filed a complaint with the U.S. Department of Labor alleging the Company discriminated against him based on a claimed disability, but the agency found no merit to his complaint. Finally, in March 2004, Zanchi filed a complaint in federal court against UDLP, claiming violations of section 8 of the National Labor Relations Act, the Federal Rehabilitations Act, the Vietnam Era Veterans Readjustment Assistance Act, and the Americans with Disabilities Act ("ADA"). UDLP moved for summary judgment, which the court granted, specifically finding that Zanchi was not disabled under the ADA. Zanchi did not appeal.

On October 30, 2006, upon learning that Higdon was working for the Company again, Zanchi contacted the Union because he believed the Company had violated its collective bargaining agreement with the Union by recalling Higdon before him. The Union filed a grievance on Zanchi's behalf on November 7, 2006. On March 8, 2007, Linda G. Medley, operations manager for the company, responded to the grievance explaining that Higdon had not been recalled, he had been reactivated after applying externally for the new NDT Inspector position. She further explained that Zanchi could also have applied for the position, but most

3

likely would not have qualified because he did not possess NDT certification.

In response to his lack of formal certification, Zanchi provided the Union with documents related to his experience and education in NDT work. Without the required NDT certification, however, the Union's Grievance Screening Committee found that Zanchi was not qualified for the NDT Inspector position. On July 11, 2007, the Union notified Zanchi of its decision not to proceed to arbitration.

On October 24, 2007, Zanchi filed a complaint of discrimination with the U.S. Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP"). In this complaint, he alleged that because of his disability status, veteran status, and prior complaints, the Company circumvented the collective bargaining agreement to avoid recalling him. Zanchi claims he received a response on May 20, 2008, informing him of his right to sue the Company.[1]

On August 20, 2008, Zanchi filed a Complaint against the Company and the Union in this Court. In its Motion for Summary Judgment, the Union argues that the Company did not breach the collective bargaining agreement, that it represented Zanchi fairly, that Zanchi's claim is barred by the statute of limitations, and that his state law breach of contract claims are preempted by federal law. Additionally, the Company argues that Zanchi cannot establish he was retaliated against, and that his Rehabilitation Act and ADA claims are barred by the doctrine of res judicata.

---

[1] Zanchi states that he filed his complaint with the NLRB in July 2007. The exhibit he references is a complaint to the OFCCP made in October 2007. There is no NLRB charge in the record. The May 2008 response, presumably from the OFCCP, was not attached to Zanchi's brief and is not in the Court's record.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

I. *Zanchi's Hybrid 301 Claim*

The parties agree that Zanchi has brought a "hybrid 301" action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against the Company and the Union. Zanchi

is not only asserting that the Company violated the collective bargaining agreement, but also that the Union breached its duty of fair representation with respect to Zanchi's claim against the Company. Defendants argue that Zanchi's claim is untimely. They also argue that Zanchi cannot prevail on the merits of his claim against either the Union or the Company.

### A. *Statute of Limitations*

A hybrid 301 claim is subject to a six month statute of limitations, accruing from the time the plaintiff knew or should have known of the union's alleged breach of its duty of fair representation. *Ryan v. Gen. Motors Corp.*, 929 F.2d 1105, 1111 (6th Cir. 1989); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 155 (1983). This time may be "when the union takes an unequivocal position that it will not seek arbitration." *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1236 (6th Cir. 1987). The Union's July 11, 2007, letter to Zanchi unequivocally stated "our recommendation is not to proceed to arbitration." The Court therefore finds that Zanchi's hybrid 301 claim began to accrue the day he received the Union's letter.

Zanchi argues that the statute of limitations did not begin to run or was tolled until the NLRB sent its "Notification of Results of Investigation" on May 20, 2008. There are several problems with this contention. First, there is no evidence that Zanchi ever filed a charge with the NLRB. Second, even if he did, "[a]n NLRB filing . . . does not toll or prevent the accrual of an unfair representation claim." *Adkins v. Int'l Union of Elec., Radio & Mach. Workers*, 769 F.2d 330, 335 (6th Cir. 1985).

The statute of limitations period for Zanchi to file his hybrid 301 claim expired shortly after January 11, 2008. Zanchi did not file his Complaint until August 20, 2008. Consequently, Zanchi's hybrid 301 claim is barred by the statute of limitations.

B. *Merits of Zanchi's Hybrid 301 Claim*

Even if Zanchi's hybrid 301 claim was not barred by the statute of limitations, it would still fail because he has not shown that the Company violated the collective bargaining agreement or that the Union breached its duty of fair representation. To recover under § 301, Zanchi "must prove both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation." *Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998). These claims "are interdependent;" Zanchi must demonstrate both violations to recover against either party. *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559-60 (6th Cir. 1990); *see also Ryan*, 929 F.2d at 1109 (noting burden of proof in hybrid 301 actions lies with the plaintiff).

The collective bargaining agreement between the Company and the Union requires former employees be recalled from layoff status based on seniority. Zanchi argues the Company breached the collective bargaining agreement by recalling Higdon instead of him. Zanchi, however, has submitted no evidence that Higdon was recalled. The evidence shows that a new position of NDT Inspector was created and Higdon was "reactivated" after applying externally for the position. Zanchi has not submitted any evidence to support his theory that the Union and the Company acted in concert to deny him the position in favor of Higdon. He only asserts that Higdon did not possess the required NDT certification. The sole document to support this assertion is Higdon's statement of certification, which would have expired if Higdon did not become recertified by May 23, 1994. Zanchi has not demonstrated that Higdon actually lacked NDT certification at any time. In contrast, Higdon outlined his NDT certification history in an affidavit submitted to the Court. Based on this evidence, the Court finds that Zanchi has not

shown that the Company breached the collective bargaining agreement.

Zanchi also has not demonstrated that the Union breached its duty of fair representation. "[B]reach of the duty of fair representation occurs where: the union's conduct is arbitrary, discriminatory or in bad faith; the union processes the grievance in a careless manner; or the union inadequately handles the grievance because it is ignorant of contract provisions having a direct bearing on the case." Ryan, 929 F.2d at 1109. Zanchi argues that the Union's actions were discriminatory.

Conclusory allegations of discrimination are insufficient to maintain an action against a union for breach of its duty of fair representation; rather, an affirmative showing that the union's inaction was motivated by bad faith is required. *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975). The Court must apply a deferential standard of review when evaluating a union's actions. *Nida v. Plant Protection Ass'n Nat'l*, 7 F.3d 522, 526 (6th Cir. 1993).

Here, the Union filed a grievance on Zanchi's behalf shortly after he asked the Union to do so. The Union investigated and found that Zanchi did not have the required certification for the NDT Inspector position. In response to Zanchi's questions whether Higdon was qualified, the Company explained that Higdon was awarded the position because "he possessed the skills and documented training to perform" the job. The Union gave Zanchi the opportunity to show he had NDT certification. When Zanchi could not provide such documentation, the Union notified Zanchi that it would not proceed to arbitration.

In light of these facts the Court cannot find that the Union's decision not to arbitrate, despite Zanchi's unsupported assertion that Higdon lacked NDT certification, was

discriminatory. Further, even if Higdon was not NDT certified, Zanchi has not provided any evidence that the Union's actions were motivated by bad faith. Therefore the Court finds that Zanchi has not shown that the Union breached its duty of fair representation.

    II. *Zanchi's State Law Breach of Contract Claims*

The Union also argues that Zanchi's state law claims of "common law breach of contract" and "promissory estoppel" are preempted by federal law. Zanchi does not address this argument in his response. The Court will therefore assume Zanchi concedes these claims are preempted.

    III. *Zanchi's Retaliation Claim*

In its Motion for Summary Judgment, the Company contends that Zanchi cannot establish he was retaliated against due to his pursuit of prior claims. To establish a prima facie case of retaliation, a plaintiff must prove that (1) he "engaged in legally protected activity;" (2) "the defendant knew about the plaintiff's exercise of this right;" (3) "the defendant then took an employment action adverse to the plaintiff;" and (4) "the protected activity and the adverse employment action are causally connected." *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant "'to articulate some legitimate nondiscriminatory reason' for its actions." *Id.* at 551 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the "defendant articulates its nondiscriminatory reasons for taking the employment action against the plaintiff," the plaintiff must answer "by demonstrating that a reasonable jury could find by a preponderance of the evidence that the defendant's stated reasons are pretextual." *Id.* at 552.

After he was laid off, Zanchi filed several complaints and a lawsuit. The Company was

aware of this activity. For the purposes of this motion the Court will treat the Company's reactivation of Higdon as an employment action adverse to Zanchi. The Company only asserts Zanchi cannot prove the fourth element of his prima facie case: that Zanchi's prior claims against the Company and Higdon's reactivation are causally connected.

The Court finds that Zanchi has not demonstrated any causal connection that in retaliation for his prior complaints, the Company circumvented the collective bargaining agreement by creating a new position in order to avoid recalling him. In fact, Zanchi does not even mention his prior complaints in his response argument. Even if Zanchi could meet his prima facie burden, however, the Company has provided a legitimate, non-discriminatory reason for not hiring Zanchi as an NDT Inspector. Undisputably, Zanchi does not possess the required NDT certification. Finally, Zanchi has not demonstrated that this reason is merely pretext for discrimination. He asserts that Higdon also lacked the NDT certification, but has not provided any evidence to support this assertion. Therefore, Zanchi's retaliation claim fails.

IV. *Zanchi's Rehabilitation Act and ADA Claims*

The Company also argues that Zanchi's remaining claims for violations of the Rehabilitation Act and the ADA are barred by the doctrine of res judicata because this court already rendered a decision on identical issues on June 29, 2005, in Zanchi's prior lawsuit against the Company. Zanchi does not address this argument in his response. The Court will therefore assume Zanchi concedes these claims are barred.

## CONCLUSION

For the foregoing reasons, the Union's Motion for Summary Judgment (DN 22) is GRANTED and UDLP and BAE's Motion for Summary Judgment (DN 21) is GRANTED.

The Court will issue an appropriate order.

11